ROBERT E. ALLEN - State Bar No. 166589
rallen@glaserweil.com
LARA A. PETERSEN - State Bar No. 318475
lpetersen@glaserweil.com
JASON C. LINGER - State Bar No. 323031
jlinger@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Western Division

| | |
|---|---|
| RICHARD CURRIER, an individual; and B2SS LLC, a California limited liability company,<br><br>                    Plaintiffs,<br><br>v.<br><br>CULTURE KINGS USA, INC., a Delaware corporation; TF APPAREL PTY LTD., an Australian private company; A.K.A. BRANDS, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>                    Defendants. | CASE NO.: 2:23-cv-1547<br><br>**COMPLAINT FOR:**<br><br>**(1) TRADEMARK INFRINGEMENT – 15 U.S.C. § 1125(A);**<br>**(2) COPYRIGHT INFRINGEMENT – 17 U.S.C. §501;**<br>**(3) VIOLATION OF THE DMCA – 17 U.S.C. §§ 1202(A)-(B);**<br>**(4) UNFAIR COMPETITION – 15 U.S.C. § 1125(A);**<br>**(5) UNFAIR COMPETITION – CAL. BUS. & PROF. CODE § 17200; AND**<br>**(6) UNFAIR COMPETITION – CALIFORNIA COMMON LAW**<br><br>**JURY TRIAL DEMANDED** |

Richard Currier ("Currier") and B2SS LLC ("B2SS" and collectively, "Plaintiffs") hereby bring this Complaint against Culture Kings USA, Inc. ("Culture Kings")., TF Apparel Pty Ltd. ("TFA"), a.k.a. Brands, Inc. ("Brands"), and Does 1-10 (collectively, "Defendants"). Plaintiffs allege and state as follows:

## INTRODUCTION

1.      Currier is a Los Angeles-based artist who creates designs in the apparel industry, including hand-drawn art on hats, t-shirts, hoodies, sweatpants and more. At least as early as October 2017, Currier began using "BACK 2 SCHOOL SPECIAL" and "B2SS" in connection with this apparel. In 2019, Currier founded his own company, B2SS, and began offering high quality, creative and original designs for his apparel brand.

2.      Recognizing Currier's talent, two others involved in the apparel industry claimed they could bring Currier's designs to a wider audience at a lower price point. Together, the three of them started another company, Homeroom Studios LLC ("Homeroom"), with Currier owning 50%.

3.      Owing to Currier's ingenuity, a licensee of the NBA granted B2SS and Homeroom the nontransferable right to manufacture and sell products bearing NBA's team logos.  To that end, Currier created hand-drawn original graphics incorporating those logos for B2SS, who in turn licensed them to Homeroom, who marketed and sold apparel featuring those graphics and B2SS's trademarks.

4.      Unknown to Plaintiffs, however, Currier's "partners" made a side deal with Defendants to market and sell that apparel, all without the consent of Currier, B2SS or Homeroom.

5.      Even after Plaintiffs notified Defendants in writing that Defendants did not have the right to market or sell that apparel and to immediately cease and desist from continuing to do so, Defendants not only persisted in their wrongful conduct but expanded their infringement of B2SS's designs and trademarks. Thus, Plaintiffs now seek relief from this Court to stop the Defendants' wrongful conduct and disgorge

from Defendants their ill-gotten gains.

6.    This is an action for (1) trademark infringement under Section 43 of the Lanham Act, 15 U.S.C. § 1125; (2) copyright infringement under the Copyright Act, 17 U.S.C. § 501; (3) falsification and alteration of copyright management information ("CMI") under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 1202-03; (4) unfair competition under 15 U.S.C. § 1125(a); (5) unfair competition under Cal. Bus. & Prof. Code § 17200; and (6) unfair competition under California common law.

**PARTIES**

7.    Currier is an individual residing in Los Angeles County, California.

8.    B2SS is a California limited liability company with its principal place of business at 2135 E 7th Place, Unit 7, Los Angeles, California 90021.

9.    Plaintiffs are informed and believe, and on that basis allege, that Defendant Culture Kings USA, Inc. is a Delaware corporation with its principal place of business at 100 Montgomery Street, Suite 1600, San Francisco, California 94104.

10.    Plaintiffs are informed and believe, and on that basis allege, that Defendant a.k.a. Brands, Inc. is a Delaware corporation with its principal place of business at 100 Montgomery Street, Suite 1600, San Francisco, California 94104.

11.    Plaintiffs are informed and believe, and on that basis allege, that Defendant TF Apparel Pty Ltd, is an Australian private company with its principal place of business at 39 Kerry Road, Archerfield, QLD, 4108 Australia, but is conducting business in California through its related entities, Culture Kings and Brands.

12.    Plaintiffs are informed and believe, and on that basis allege, that Defendants are responsible for their acts and for their conduct, which are the true legal causes of the damages herein alleged.

13.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, inclusive (individual, a "Doe

Defendant" and collectively, "Doe Defendants"), are unknown to Plaintiffs at this time, and Plaintiffs, therefore, sue Doe Defendants by such fictitious names. Plaintiffs will ask leave of Court to amend this Complaint when the same shall have been ascertained. Plaintiffs are informed and believe, and based thereon allege that each Doe Defendant was responsible intentionally, or in some other actionable manner for the events and happenings referred to herein, which proximately caused injury and damage to Plaintiffs, as hereafter alleged.

14.    Any reference to Defendants shall refer to each named Defendant and all Doe Defendants, and to each of them. Any reference to a particular Defendant shall refer to the named Defendant only.

## JURISDICTION AND VENUE

15.    This is an action for trademark infringement and copyright infringement arising under the trademark laws and the copyright laws of the United States, Titles 15 and 17, United States Code, respectively. Subject matter jurisdiction as to these claims is conferred on this Court by under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 1400(a).

16.    Personal jurisdiction as to these Defendants is conferred on this Court because Defendants' contacts with California are systematic and continuous so as to render Defendants essentially at home in California. In particular, Defendants have their principal places of business in California.

17.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a) through (c) and 1400(a) as at least one of the Defendants have their principal place of business in this district and therefore, are deemed to reside here for purposes of venue. Moreover, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, and Plaintiffs are being injured in this district.

## STATEMENT OF FACTS

18.    Currier is a Los Angeles-based artist and streetwear designer specializing in unique, adolescent-inspired, playful designs on clothing and other apparel. Each

product offered for sale by B2SS features hand-drawn art by Currier, who is also known by his artist name "GINO."

19.     In February 2019, Currier founded and is the sole owner of B2SS LLC ("B2SS"), which Currier registered as a single-member California limited liability company and was formed for the purpose of offering for sale high-end cut and sew clothing. B2SS offers for sale its products on its website, https://B2SS.co/, but has also partnered with other brands to market and offer for sale its apparel. For instance, B2SS has collaborated with Pacific Sunwear to offer an exclusive "Space Camp" line, and with Rolling Loud Music Festival and Urban Outfitters to offer an exclusive capsule collection entitled "2049." By way of further example, B2SS held a launch party of its first capsule at Fred Segal.

20.     B2SS launched several clothing brands, including "Back 2 School Special" a/k/a "B2SS" and "After School Special" (individually and collectively, the "Marks"). B2SS is the sole owner of the trademarks in the Marks relating to clothing and online retain stores. Indeed, Currier is the owner of U.S. Trademark Registration Nos. 6985474, 6985477, 6985473 and 6985476, and U.S. Trademark Application Serial Nos. 97778791 and 97778801.

21.     In 2020, Currier entered into an arrangement with Joseph Munayyer ("Munayyer") and Cudda Holland ("Holland"), under which the goal was to bring Currier's designs to a wider audience at a lower price point. Currier, Munayyer, and Holland established a separate company called Homeroom, with the membership units and voting rights being Currier 50%, Munayyer 30%, and Holland 20%.

22.     Public Works Department d/b/a NBALAB ("NBALAB") is a research and development incubator that provides licensing opportunities and product development to innovative companies and individuals, such as Plaintiffs. On behalf of the National Basketball Association and its member teams, NBALABS has the right to license the right to use certain trademarks of NBA member teams as well as the NBALAB logo.

23.     Based upon Currier's creativity, NBALAB entered into an agreement dated September 14, 2020 with both B2SS and Homeroom (the "NBALABS Agreement"), licensing to them the nontransferable right to manufacture and sell products bearing NBA's intellectual property, including the trademarks of various teams in the NBA (the "Licensed Merchandise").

24.     To that end, on several occasions, Currier created for B2SS hand-drawn original graphics and derivative works of NBA logos (with NBALAB's consent) to be used on B2SS's Licensed Merchandise (the "Works").  Copies of the Works are attached as **Exhibit A** and **Exhibit B**.  For clarity, the "Works" that are derivative works do not include the pre-existing NBA logos and graphics, but do include the new original material created by Currier as part of the derivative works.

25.     Currier is the sole author and exclusive owner of each of the Works.

26.     As of the date hereof, Currier has registered some of the Works with the United States Copyright Office.

a.     On December 19, 2022, Currier registered the Work *Chicago Bulls Graphic* (the "Bulls Graphic"), registration No. VA 2-331-214.

b.     On December 30, 2022, Currier registered the following works with the following registration numbers (the Bulls Graphic, along with the below, are collectively referred to as the "Graphics"):

    i.   *01_Celtics_Graphic*, No. VA-2-335-428;

    ii.  *02_Nets_Graphic*, No. VA-2-335-209;

    iii. *03_Knicks_Graphic*, No. VA-2-335-210;

    iv.  *04_76ers_Graphic*, No. VA-2-335-429;

    v.   *05_Raptors_Graphic*, No. VA-2-335-326;

    vi.  *07_Calaviers_Graphic*, No. VA-2-335-328;

    vii. *08_Pistons_Graphic*, No. VA-2-335-272;

    viii. *09_Pacers_Graphic*, No. VA-2-335-595;

    ix.  *10_Bucks_Graphic*, No. VA-2-335-097;

       x.   *11_Hawks_Graphic*, No. VA-2-335-096;

      xi.   *12_Hornets_Graphic*, No. VA-2-335-104;

     xii.   *13_Heat_Graphic*, No. VA-2-335-102;

    xiii.   *14_Magic_Graphic*, No. VA-2-335-103;

    xiv.   *15_Wizards_Graphic*, No. VA-2-335-091;

     xv.   *16_Nuggets_Graphic*, No. VA-2-335-139;

    xvi.   *17_Timberwolves_Graphic*, No. VA-2-335-105;

   xvii.   *18_Thunder_Graphic*, No. VA-2-335-095;

  xviii.   *19_Blazers_Graphic*, No. VA-2-335-141;

    xix.   *20_Jazz_Graphic*, No. VA-2-335-143;

     xx.   *21_Warriors_Graphic*, No. VA-2-335-135;

    xxi.   *22_Clippers_Graphic*, No. VA-2-335-101;

   xxii.   *23_Lakers_Graphic*, No. VA-2-335-100;

  xxiii.   *24_Suns_Graphic*, No. VA-2-335-099;

  xxiv.   *25_Kings_Graphic*, No. VA-2-335-098;

   xxv.   *26_Mavericks_Graphic*, No. VA-2-335-144;

  xxvi.   *27_Rockets_Graphic*, No. VA-2-335-090;

 xxvii.   *28_Grizzlies_Graphic*, No. VA-2-335-129;

xxviii.   *29_Pelicans_Graphic*, No. VA-2-335-206; and

  xxix.   *30_Spurs_Graphic*, No. VA-2-335-207.

    c.    **Exhibit A** are the Works that constitute the Graphics.

    d.    Copies of the registration certificates for the Graphics are attached as **Exhibit C.**

e.    On January 11, 2023, Currier registered ten Works, including original, hand-drawn logos of the following six NBA teams: The New York Knicks, Cleveland Cavaliers, Miami Heat, Oklahoma City Thunder, Phoenix Suns and Memphis Grizzlies (individually and collectively, the "Team Logos"), Registration No. VAu 1-489-534. Copies of the Team Logos are below and a

copy of the Registration is also attached in **Exhibit C**.

f.      The Graphics and Team Logos are individually and collectively referred to as the "Registered Works."

27.     Homeroom established two websites, www.afterschoolspecial.com and



stayinschool.com (the "Homeroom Websites") on which it sold the Licensed Merchandise.

28.     Currier granted to B2SS the exclusive right to reproduce, publicly display, create derivative works and distribute the Works (including, without limitation, the Registered Works).

29.     B2SS sublicensed to Homeroom the limited, non-transferable and non-sublicensable right to distribute the combination of the Marks "After School Special by B2SS" (the "Combined Marks") for Homeroom's new line of lower-priced designs of the Licensed Merchandise, which was to be manufactured by Homeroom under Currier's supervision and solely in connection with authorized use of the Works as part of the Licensed Merchandise.

30.     B2SS also sublicensed to Homeroom the limited right to distribute certain of the Works solely in connection with Licensed Merchandise that was manufactured and directly sold by Homeroom through distribution channels approved

by NBALAB; provided that the Licensed Merchandise include the Combined Marks.

31.     Through their agreement with NBALAB, neither Homeroom nor B2SS acquired the right to license to any third party the right to manufacture or sell any products bearing NBA's intellectual property.

32.     Nonetheless, in October 2021, Patrick Kronfli ("Kronfli"), a person hired by Munayyer without Currier's consent and without the consent of the majority of voting members of Homeroom, purportedly licensed to TF Apparel Pty. Ltd., including through its brand Culture Kings, the right to manufacture, market, reproduce, publicly display, distribute and sell apparel featuring the Marks and Works, knowing (or having reasonable grounds to know) that such apparel would not constitute Licensed Merchandise.  To be clear, Defendants are not approved by NBALABS as a distribution channel.

33.     Neither Currier nor B2SS have ever authorized Defendants to copy or use the Marks or the Works.  Indeed, as of the date hereof, neither Currier nor B2SS have yet to authorized *anyone* to copy or exploit any of the Team Logos.

34.     Despite lacking the authority to do so, Defendants have copied and continue to copy the Registered Works on apparel offered for sale on Culture Kings' website (https://www.culturekings.com/, the "Website"), as well as publicly displaying the Registered Works on the Website itself (the "Unauthorized Copying") and marketing the works as "World Exclusive" products, even though Defendants knew that such statement was false.  Examples of Defendants' Unauthorized Copying is attached as **Exhibit D.**

35.     In addition to the unlawful copying of the Registered Works, on information and belief, without Plaintiffs' permission or authority, Defendants obtained and copied the digital files of the Works, and then used those digital files to reproduce and manufacture the Works themselves onto apparel.

36.    Defendants originally obtained certain copies of the Works on apparel from Munayyer and/or Kronfli (but without the permission or consent of Currier, B2SS or Homeroom), those copies at least included the proper copyright management information ("CMI"), which identified B2SS as the purveyor of the Works. An example is below.




37.    On information and belief, when Defendants copied the Works as part of their own manufacturing of the Works on apparel, they removed the CMI and/or failed to add the CMI in connection with the distribution of the Works. An example is below.



38.    Additional examples of Defendants' removal of Plaintiffs' CMI is attached as **Exhibit E**.

39.    Defendants have engaged in a consistent pattern of removing and/or omitting Plaintiffs' CMI from Defendants' uses of the Works, knowing, or having reasonable grounds to know, that doing so would induce, enable, facilitate, or conceal infringement of them.

40.    B2SS's designs on its branded apparel are known throughout the United States for their unique and distinctive style and quality.

41.    B2SS is the sole owner of the distinctive artwork and Marks for use with

apparel and in connection with online retail sales.

42.     B2SS has used the Marks in commerce on apparel since 2017.  B2SS's use has been substantially continuous and exclusive.  B2SS therefore owns longstanding common law rights in the Marks.

43.     The Marks registered with or submitted to the United States Trademark Office are attached as **Exhibit F.**

44.     Defendants sold and continue to sell apparel featuring B2SS's designs, some of which also feature the Combined Marks, without B2SS's permission or consent to do so.

45.     Defendants have sold and continue to sell (and, on information and belief, have manufactured and continue to manufacture) two types of unauthorized goods without the permission or consent of B2SS, Currier or Homeroom (the "Unauthorized Merchandise"):  (1) apparel featuring the Works and branded with the Combined Marks (the "Branded Unauthorized Merchandise"); and (2) apparel featuring the Works without the Combined Marks (the "Unbranded Unauthorized Merchandise").  Even though the Unbranded Unauthorized Merchandise does not include the Combined Marks, Defendants have marketed the Unbranded Unauthorized Merchandise on the Website as related to and part of B2SS's brand, After School Special.

46.     Defendants placed photographs of apparel featuring B2SS's designs, some of which also feature the Combined Marks, on their websites (including the Website), which was publicly displayed online throughout the country as a means for Defendants to advertise its products, including the Unauthorized Merchandise, and for consumers to directly purchase products, including the Unauthorized Merchandise, from the Defendants.

47.     Defendants have been engaged in the promotion and sale of the Unauthorized Merchandise using B2SS's custom designs and Marks to lure customers in the United States, including in this District, through its online catalog of products.

48.     B2SS obtained rights in its custom designs and Marks prior to Defendants' usage of those designs and Marks on the Unauthorized Merchandise or in its advertising.

49.     Defendants never sought or obtained permission from Plaintiffs to either (a) manufacture or sell goods utilizing or featuring B2SS's custom designs or Marks or (b) advertise the Unauthorized Merchandise using or featuring B2SS's custom designs or Marks.

50.     Defendants' use of B2SS's custom designs and Marks has created a likelihood of confusion between B2SS and Defendants, as the parties' goods, channels of trade, and potential consumers are identical.

51.     On information and belief, actual confusion in the marketplace has taken place as a number of consumers believed., upon seeing B2SS's custom designs and Marks on goods sold by Defendants, that Defendants were selling B2SS's goods and/or Defendants were affiliated, associated, or sponsored by B2SS, when in fact they were not.

52.     On June 15, 2022, Plaintiffs, through counsel, sent a letter to TF Apparel Pty Ltd care of a.k.a Brands Holding Corp. based on Plaintiffs' then-understanding that this entity controlled the "Culture Kings" brand. Plaintiffs are now informed and believe, and on that basis allege, that Defendants are the true and correct wrongdoers as Defendants have been marketing, offering for sale, and selling products bearing the Marks and the Works.

53.     In the June 15th correspondence, Plaintiffs' counsel informed Defendants of their infringement of the Works and the Marks and demanded that Defendants cease and desist further infringement. *See* **Exhibit G** for a copy of that letter, which was transmitted via United States Postal Service Certified Mail and electronic mail.

54.     On July 27, 2022 Plaintiff's counsel had a zoom video conference with Defendants' counsel regarding the June 15th correspondence and the claims made therein.  Defendants' counsel claimed that they were unaware of Plaintiffs' rights, that

Defendants had purchased an order from Kronfli and Munayyer, and that even though they did not have the right to do so, Defendants would only sell existing remaining inventory from that order.

55.     Despite Defendants counsel's assurances, on information and belief, Defendants have not only continued to purchase and sell Unauthorized Merchandise, but are manufacturing (or licensing others to manufacture) additional Unauthorized Merchandise.

56.     Although the foregoing are exemplary, far more egregious instances of copyright and trademark misappropriation exist as well. Defendants have directly misappropriated Plaintiffs' intellectual property and goodwill established thereunder by not only reproducing apparel, including t-shirts, featuring the copyrighted Works, Defendants have also used the Marks in connection with this apparel. Given Defendants' actual and constructive knowledge of Plaintiffs' rights as evidenced by the previous dealings of Defendants and Homeroom, Plaintiffs' June 15, 2022 correspondence and July 27, 2022 video conference, there can be little doubt as to the willful nature of Defendants' infringement.

57.     The natural and probable foreseeable result of Defendants' wrongful conduct has been to deprive Plaintiffs of the benefits of selling products embodying their original, copyrighted Works and Marks, and to injure Plaintiffs' relationship with present and prospective customers. Defendants' infringements were and are willful, in bad faith, and executed with full knowledge of Plaintiffs' trademarks and copyrights, and in conscious disregard for Plaintiffs' exclusive rights in its protected Works and Marks.

58.     Determined to mislead consumers, Defendants have adopted identical trademarks and designs that infringe Plaintiffs' Marks and Registered Works, respectively. Indeed, by advertising and offering for sale products that are substantially identical to that of Plaintiffs under highly similar marks, Defendants have been and continue to trade off Plaintiffs' goodwill. Further, Defendants are

diverting business from consumers who are interested in Plaintiffs' well-regarded designs to Defendants' offerings of unknown quality. Consumers are likely to be confused, mistaken, and/or deceived in this way. Additionally, Defendants' quality control standards are unknown to Plaintiffs but, at a minimum, Plaintiffs lack the ability to control such standards. As such, Defendants' conduct holds a great potential to not only cause Plaintiffs a loss of sales, but also the harm Plaintiffs' goodwill and diminish the value of Plaintiffs' Marks and Works.

## FIRST CLAIM FOR RELIEF

### Trademark Infringement – 15 U.S.C. § 1125(a)

59.     Plaintiffs hereby restate and reallege the allegations of paragraphs 1 through 58 above and incorporate them by reference.

60.     Currier is the exclusive trademark owner of the Marks, "BACK 2 SCHOOL SPECIAL," "AFTER SCHOOL SPECIAL," and "B2SS," all of which Plaintiffs use to designate the origin of their goods. Currier is also the exclusive trademark owner of the Combined Marks, "AFTER SCHOOL SPECIAL BY B2SS."

61.     Each of the Marks and the Combined Marks is a valid, protectable trademark.

62.     Beginning at least as early as October 2017, Plaintiffs have continuously used the marks "BACK 2 SCHOOL SPECIAL" and "B2SS" in commerce in connection with apparel and other products.

63.     Beginning at least as early as May 2020, Plaintiffs have continuously used the mark "AFTER SCHOOL SPECIAL" in commerce in connection with apparel and other products.

64.     Defendants have infringed these rights by using the Marks in connection with Defendants' goods in interstate commerce in a manner that is likely to cause confusion among ordinary consumers as to the sources, sponsorship, affiliation or approval of the goods. Defendants have done so without the permission of B2SS or Currier.

65.    Defendants' acts constitute trademark infringement, false designation of origin, false or misleading representation, false advertising, and false or misleading description which: (a) is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, right to use, or association of Defendants with Plaintiffs and as to the origin, sponsorship, or approval of Defendants' products, services, and commercial activities by Plaintiffs; and (b) in commercial advertising or promotion, misrepresent the nature, characteristics, qualities or origin of Defendants' products, services, or commercial activities and/or Plaintiffs' authorized products, services, or commercial activities.

66.    Defendants' actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  As a result of Defendants' unlawful acts, Defendants have been unjustly enriched, and Plaintiffs have been damaged.

67.    Defendants' unlawful activities have caused, and unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Plaintiffs in terms of their business, reputation, and goodwill in the Marks.  Plaintiffs are damaged and believes they will continue to be damaged by Defendants' false descriptions and representations through direct diversion of sales and/or through a lessening of goodwill associated with the Marks. Defendants' acts also negatively impact Plaintiffs' standing and reputation in the apparel industry by associating her with Defendants' inferior brand equity.  Plaintiffs have no adequate remedy at law.

68.    Under 15 U.S.C. §§ 1116-1117, Plaintiffs seek injunctive relief, compensatory damages, disgorgement of profits, treble damages, and recovery of its costs and attorney's fees against Defendants for its various and continuing acts of infringement, false affiliation, false advertising, and false competition.  Alternatively, Plaintiffs may elect, in lieu of actual damages and profits under 15 U.S.C. § 1117(a), an award of statutory damages under 15 U.S.C. §1117(c) of $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed.

## **SECOND CLAIM FOR RELIEF**

### **Copyright Infringement – 17 U.S.C. § 501**

69.  Plaintiffs hereby restate and reallege the allegations of paragraphs 1 through 68 above and incorporate them by reference.

70.  Currier is the sole author of the Registered Works and the exclusive owner of all rights associated with the Registered Works. Each of the Registered Works is comprised of wholly original material and have been deemed by the United States Copyright Office to be copyrightable subject matter under the copyright laws of the United States.

71.  With full knowledge of Plaintiffs' rights in the Registered Works and with reckless disregard for Plaintiffs' copyrights, Defendants have willfully infringed and continue to willfully infringe Plaintiffs' copyrights in the Registered Works by reproducing, displaying publicly, creating derivative works and/or distributing (and authorizing the reproduction, public display, creating derivative works, and distributing by third parties) the Registered Works on various apparel and merchandise without Plaintiffs' consent, approval, or license.

72.  Defendants' actions constitute a direct violation of the exclusive rights under copyright with respect to the Registered Works under 17 U.S.C. § 106.

73.  Defendants have benefited from their infringement of the Registered Works through sales, brand promotion, and corporate goodwill.  As a result of Defendants' infringement, Plaintiffs have suffered monetary damages, as well as damages to their goodwill and reputation.

74.  Pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to actual damages, including Defendants' profits from infringement in connection with the Registered Works, in an amount to be proven at trial.

75.  Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at

law.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiffs are entitled to injunctive relief prohibiting Defendants from further infringing the Registered Works and ordering Defendants to destroy all copies of their products and advertisements made in violation of Currier's exclusive rights.

### THIRD CLAIM FOR RELIEF

### Violation of the DMCA – 17 U.S.C. §§ 1202(a)-(b)

76.     Plaintiffs hereby restate and reallege the allegations of paragraphs 1 through 75 above and incorporate them by reference.

77.     Despite knowing that the correct CMI for each of the Works identifies B2SS as the purveyor thereof, such as "After School Special by B2SS," Defendants knowingly displayed publicly and distributed the Works without the proper CMI, thereby effectively removing the CMI and distributed the CMI that was false.

78.     Given Defendants' knowledge of the correct CMI, Defendants knew that their providing and distributing false CMI on the Works would induce, enable, facilitate, or conceal the infringement of the copyright in such Works.

79.     Plaintiffs did not authorize Defendants to remove, alter or falsify the CMI on the Works, nor does the law permit such removal, alteration or falsification.

80.     Additionally, Defendants intentionally removed, altered and falsified the CMI on certain of the Works, and then distributed the Works, knowing that the CMI had been removed, altered and falsified, knowing that Plaintiffs never authorized such alteration or falsification.

81.     Given Defendants' knowledge of the correct CMI, Defendants knew, or had reasonable grounds to know, that their intentional removal and falsification of CMI and their distribution of Works, knowing that CMI had been removed and falsified without Defendants' consent, would induce, enable, facilitate, or conceal the infringement of the copyright in such Works.

82.     These acts by Defendants constitute direct violations of 17 U.S.C. §§ 1202(a)-(b).

83.    Plaintiffs are a "person injured" by Defendants' violations of 17 U.S.C. § 1202, thereby qualifying them as persons who may bring a civil action for such violations under 17 U.S.C. § 1203.

84.    Defendants' violation of 17 U.S.C. § 1202 has damaged Plaintiffs in an amount to be proven during trial.

85.    Pursuant to 17 U.S.C. § 1203(c), as the result of Defendants' removal and falsification of CMI, Defendants are liable for either Plaintiffs' actual damages plus any of Defendants' additional profits derived from the unauthorized alteration or falsification of the Works' CMI (or the distribution of same), or, at Plaintiffs' election, an award of statutory damages of up to $25,000 for each violation.

86.    Plaintiffs are also entitled to recover their attorneys' fees and costs pursuant to 17 U.S.C. §§ 1203(b)(4)-(5), regardless of whether the Works are registered with the United States Copyright Office and regardless of when the first violation occurred.

87.    Unless stopped by an injunction, Defendants' behavior will continue and will cause Plaintiffs to suffer irreparable harm for which there is no adequate remedy at law. Therefore, Plaintiffs are also entitled to injunctive relief.

## FOURTH CLAIM FOR RELIEF

### Unfair Competition – 15 U.S.C. § 1125(a)

88.    Plaintiffs hereby restate and reallege the allegations of paragraphs 1 through 87 above and incorporate them by reference.

89.    Defendants have deliberately and willfully attempted to trade on Plaintiffs' hard-earned goodwill in its trademarks and the reputation established by Plaintiffs in connection with its products.

90.    Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Plaintiffs of the ability to control the consumer perception of its products offered under Plaintiffs' trademarks, placing the valuable reputation and goodwill of Plaintiffs in the hands of Defendants.

91.     Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Plaintiffs, and as to the origin, sponsorship or approval of Defendants and their products and/or services, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

92.     As a result of Defendants' aforesaid conduct, Plaintiffs have suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by Plaintiffs in its trademarks. This continuing loss of goodwill cannot be properly calculated and thus, constitutes irreparable harm and an injury for which Plaintiffs have not adequate remedy at law. Plaintiffs will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## FIFTH CLAIM FOR RELIEF

### Unfair Competition – Cal. Bus. & Prof. Code § 17200

93.     Plaintiffs hereby restate and reallege the allegations of paragraphs 1 through 92 above and incorporate them by reference.

94.     Defendants have deliberately and willfully attempted to trade on Plaintiffs' hard-earned goodwill in its trademarks and the reputation established by Plaintiffs in connection with its products.

95.     Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Plaintiffs of the ability to control the consumer perception of its products offered under Plaintiffs' trademarks, placing the valuable reputation and goodwill of Plaintiffs in the hands of Defendants.

96.     Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Plaintiffs, and as to the origin, sponsorship or approval of Defendants and their products and/or services.

97.     Defendants' wrongful acts constitute a violation of Cal. Bus. & Prof. Code § 17200.

98.     Defendants had direct and full knowledge of Plaintiffs' prior use of and rights in its trademark before the acts complained of herein. Defendants' conduct was

therefore knowing, intentional and willful.

99.    As a direct and proximate result of Defendants' aforesaid conduct, Plaintiffs have suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by Plaintiffs in its trademarks. This continuing loss of goodwill cannot be properly calculated and thus, constitutes irreparable harm and an injury for which Plaintiffs have not adequate remedy at law. Plaintiffs will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## SIXTH CLAIM FOR RELIEF

### Unfair Competition – California Common Law

100.    Plaintiffs hereby restate and reallege the allegations of paragraphs 1 through 99 above and incorporate them by reference.

101.    Defendants have deliberately and willfully attempted to trade on Plaintiffs' hard-earned goodwill in its trademarks and the reputation established by Plaintiffs in connection with its products.

102.    Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Plaintiffs of the ability to control the consumer perception of its products offered under Plaintiffs' trademarks, placing the valuable reputation and goodwill of Plaintiffs in the hands of Defendants.

103.    Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Plaintiffs, and as to the origin, sponsorship or approval of Defendants and their products and/or services.

104.    Defendants had direct and full knowledge of Plaintiffs' prior use of and rights in its trademark before the acts complained of herein. Defendants' conduct was therefore knowing, intentional and willful.

105.    As a direct and proximate result of Defendants' aforesaid conduct, Plaintiffs have suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by Plaintiffs in its trademarks. This continuing loss of goodwill cannot be properly calculated and thus, constitutes irreparable harm

and an injury for which Plaintiffs have not adequate remedy at law. Plaintiffs will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests judgment as follows:

A. Entry of a judgment that Defendants have willfully and deliberately infringed the trademark in the Combined Marks;

B. Entry of a judgment that Defendants have infringed the copyright in each of the Registered Works;

C. Entry of judgment that Defendants have violated Plaintiffs' rights in each of the Works under the DMCA regarding Plaintiffs' CMI;

D. Entry of judgment that Defendants have engaged in unfair competition with Plaintiffs by deliberately misleading consumers into believing that Defendants' goods originate from or are otherwise associated with Plaintiffs;

E. Under 15 U.S.C. § 1116, an order preliminarily and permanently restraining and enjoining Defendants, its officers, agents, attorneys and employees, and those acting in privity or concert with Defendants, from using any of the Marks or a counterfeit mark thereof in connection with the sale, offering for sale, or distribution of goods and services;

F. Under 17 U.S.C. § 502, an order preliminarily and permanently restraining and enjoining Defendants, its officers, agents, attorneys and employees, and those acting in privity or concert with Defendants, from further copying or creative derivative works of the Registered Works;

G. Under 15 U.S.C. § 1116(d)(1)(A), an order providing for the seizure of goods and counterfeit marks of the Marks and the means of making such marks and records documenting the manufacture, sale or receipt of things involved in Defendants' violations;

H. Under 17 U.S.C. §§ 503 and 1203(b)(6), for an order requiring Defendants

to destroy all infringing copies of the Registered Works, including all digital copies or any other means by which they could be used again by Defendants without Plaintiffs' authorization, as well as all related records and documents s that are in Defendants' possession, custody, or control, now and in the future;

I.  Under 15 U.S.C. § 1117(a), for violation of the Marks:  (1) Defendants' profits from the sale of goods and services using or related to the Marks; (2) damages sustained by Plaintiffs, including injury to Plaintiffs' reputation, good will and false designation of origin, and false association and false endorsement; and (3) the costs of this action;

J.  Under 15 U.S.C. § 1117(b), for three times such profits or damages (whichever is greater), together with reasonable attorneys' fees;

K.  Alternatively, Plaintiffs may elect, in lieu of actual damages and profits under 1117(a), an award of statutory damages under 15 U.S.C. §1117(c) of $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed;

L.  Under 17 U.S.C. § 504, for actual damages and all of Defendants' profits derived from the unauthorized use of the Registered Works;

M. Under 17 U.S.C. §1203, for actual damages and all of Defendants' profits derived from the unauthorized alteration and falsification of the CMI on or in connection with Works, and for the unauthorized distribution of the Works with altered and false CMI, where applicable or at Plaintiffs' election, statutory damages of not less than $2,500 or more than $25,000 for each such violation;

N.  Under 17 U.S.C. § 1203(b)(4)-(5), an award to Plaintiffs of attorneys' fees, court costs, and other reasonable expenses associated with this lawsuit, in an amount to be determined at trial;

O.  An award to Plaintiffs of pre- and post-judgment interest at the maximum

legal rate; and

P.  For such other relief that the Court may deem necessary, just, and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury in this case on all issues so triable.

DATED:  March 1, 2023                    Respectfully submitted,

GLASER WEIL FINK HOWARD
   AVCHEN & SHAPIRO LLP


By:  */s/ Robert E. Allen*
        ROBERT E. ALLEN
        LARA A. PETERSEN
        JASON C. LINGER

        Attorneys for Plaintiffs